### APGAR v. CONNELL.

(Supreme Court, Appellate Division, First Department. February 20, 1914.)

1. TRUSTS (§ 372*)—EVIDENCE TO ESTABLISH TRUST—WEIGHT AND SUFFICIENCY.
    In an action by a daughter to have a trust declared in property which she had previously conveyed to her mother, evidence *held* not to show that the daughter was induced by the fraud of the mother to make the conveyance.

    [Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 600–603; Dec. Dig. § 372.*]

2. TRUSTS (§ 372*)—EVIDENCE TO ESTABLISH TRUST—WEIGHT AND SUFFICIENCY.
    In an action by a daughter to have a trust declared on property which she had previously conveyed to her mother, evidence *held* not to support a finding that it was the understanding of the parties that the mother was to hold the property in trust for the daughter.

    [Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 600–603; Dec. Dig. § 372.*]

3. TRUSTS (§ 372*)—EVIDENCE TO ESTABLISH TRUST—WEIGHT AND SUFFICIENCY.
    In an action by a daughter to have a trust declared upon property which she had previously conveyed to her mother, where there was no evidence of any promise by the mother to hold the property in trust upon which because of trust and confidence plaintiff relied, the evidence was not sufficient to establish a trust.

    [Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 600–603; Dec. Dig. § 372.*]

Appeal from Special Term, New York County.

Action by Mary A. Apgar against Ellen Connell. From a judgment for plaintiff (79 Misc. Rep. 531, 140 N. Y. Supp. 705), defendant appeals. Reversed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-LIN, CLARKE, and SCOTT, JJ.

George H. Taylor, Jr., of New York City, for appellant.

Leander B. Faber, of Jamaica (Charles H. Street, of Jamaica, on the brief), for respondent.

LAUGHLIN, J. This action was originally brought to set aside as against the plaintiff two conveyances of separate parcels of real estate executed by the plaintiff to the defendant, Ellen Connell, her mother, on the 6th day of November, 1905, and to recover one-sixth of the proceeds of a sale by the defendant of a third parcel of real estate embraced in the same deed subject to the dower right of the defendant therein, on the ground that the execution of the deed by the plaintiff was induced by false and fraudulent representations. The plaintiff recovered on the first trial; but on appeal to this court it was held that there was no evidence of fraud, and the judgment was reversed and a new trial granted. Apgar v. Connell, 150 App. Div. 424, 134 N. Y. Supp. 1093.

The theory of the plaintiff on the first trial was that her father died intestate seised of the premises in fee simple absolute, leaving a widow and six children him surviving, and that the heirs, on the assumption that the property descended to them subject to their mother's right to dower, joined in the conveyances to her the fifth day after their father's death. The day following the decision on the first trial, one of the plaintiff's brothers found a will in his father's safe purporting to have been executed by the latter. The will was duly admitted to probate on the 8th day of February, 1912, and letters testamentary were issued thereon to the widow of the testator. After the reversal of the former judgment, the issues were again brought to trial without any change in the pleadings; but at the close of the evidence counsel for plaintiff moved to amend the pleadings to conform to the evidence by adding, after paragraph 3 thereof, paragraph 3a, as follows:

"That prior to, and at the time when the papers mentioned in paragraph 3 of the complaint were signed and acknowledged by the plaintiff, the defendant represented, or caused to be represented, to the plaintiff that she, the defendant, did not intend to deprive the plaintiff of her share in the estate of her father Patrick J. Connell, deceased, as heir at law and next of kin of said deceased, but simply wished to prevent the plaintiff's husband, Melvin A. Apgar, from enjoying or controlling any part of plaintiff's said share in the estate of said deceased, and that the purpose and effect of said papers, which the plaintiff signed, was to secure the plaintiff in the ultimate enjoyment of her said share in the estate of said deceased free from any control by her husband; and that the plaintiff, when she signed and acknowledged said papers, did not understand that the purpose and legal effect of said papers was to convey her said share in the estate of said deceased to the defendant absolutely. That since said papers were signed by the plaintiff, the defendant has claimed to be the absolute owner of plaintiff's share in the estate of said deceased, under and by virtue of said papers. And also by adding an allegation to the complaint, that said deeds and said general release were never legally delivered to the defendant."

Objection was interposed, but it was overruled, and the amendment was allowed. Counsel for the defendant thereupon moved to amend the answer by alleging as a separate defense the following:

"That on· or about the 4th day of December, 1889, said Patrick J. Connell duly made and executed his last will and testament in writing, a copy of which is hereto annexed, and died in the city of New York on the 1st day of November, 1905. That on or about the 6th day of June, 1911, said will was presented for probate to one of the surrogates in the county of New York by the defendant, and such proceedings thereafter had that citations were issued, that the plaintiff herein filed objections to the probate of said will and hearings were had before the surrogate. That on or about the 7th day of February, 1912, said surrogate made a decision and a decree which was duly entered on the 8th day of February, 1912, admitting said will to probate as a will of real and personal property. That letters were duly issued, and said letters are still in full force and effect. That in and by said will the said Patrick J. Connell gave the plaintiff in this action the sum of one dollar only. This plaintiff has no interest whatever in the real estate of decedent and has no interest in said personal property except the amount of one dollar. At the time this action was brought and during the trial hereof, the defendant did not know the existence of said will and could not with reasonable diligence have discovered the existence of said will and testament, and that immediately after the death she caused a diligent search and inquiry to·be made for said will, but could not discover that he left one, and its discovery after the trial of the action was entirely by accident."

Counsel for plaintiff objected to the allowance of the amendment, and stated that if the answer were amended as requested it would be necessary for the plaintiff to further amend the complaint by pleading that the will was suppressed as part of the conspiracy to defraud the plaintiff of her interest in the estate, and that defendant knew it. The court allowed all amendments as requested and received the will in evidence; but no further evidence was offered by either party.

By the will the premises in the conveyance of which to her mother the plaintiff joined were devised, together with a bequest and devise of all the residuary estate to the defendant, and to the brothers and sisters of the plaintiff. The only provision made for the plaintiff in the will is the following: "I give and bequeath one dollar to my daughter, Mary Apgar." The will was executed on the 4th day of December, 1889. Shortly before that time the plaintiff eloped with a married man named Apgar, who married her after the death of his wife. This, however, estranged her father from her, and his attitude toward her did not change, although, unbeknown to him, she maintained friendly relations with the rest of the family.

On the last trial the court found that the execution of the deeds by the plaintiff was not induced by fraud; but found that at the time the deeds were executed it was understood between the defendant and all of the children that:

"The defendant was taking legal title to the property thereby conveyed for the benefit of all of the children equally, including the plaintiff, and said deeds and release were executed, delivered, and accepted with that understanding."

The court also found that at that time the defendant did not intend to deprive the plaintiff of an equal share with the other children in her father's estate and did not understand that the deeds were intended to convey the property to her absolutely free from any trust, and that, in fact, the deeds were not so intended; that plaintiff did not intend to convey by the deeds her share in her father's estate "to the defendant absolutely, and to deprive herself absolutely of her share in said

estate"; and that at the time when she executed the deeds she believed that she would ultimately receive an equal share with her brothers and sisters in her father's estate, "and such belief on her part was induced by her confidence" in the defendant, "and by her belief that her brothers and sisters and the defendant were friendly to her and intended that she should have an equal share in said estate"; and that at that time the plaintiff reposed confidence in the defendant, and the defendant was aware of that fact and accepted the deeds with that understanding. The court also found that the plaintiff signed, acknowledged, and delivered the deeds to her mother "with full knowledge of the contents thereof, and the said signature, acknowledgment, and delivery was not induced by any fraud or false representation on the part of the defendant, Ellen Connell, or of any other person, practiced upon the plaintiff"; and that the defendant "did not fraudulently or otherwise take advantage of the plaintiff's condition, circumstances, inexperience, or trustfulness in obtaining said signature, nor was the said signature, acknowledgment, and delivery of the said four instruments obtained by any fraudulent or other representations or advantage taken by the defendant"; and, also, that the plaintiff at all times from November 6, 1905, "knew what she had signed, acknowledged, and delivered to the defendant, Ellen Connell, on November 6, 1905, but nevertheless did not take any action looking to the setting aside of the said several instruments or any of them until October 22, 1909."

The trial court found, among other things, as conclusions of law that equity and good conscience forbid that the defendant should be permitted to claim absolute title to the property; that the negotiations between the members of the family after the death of the testator which culminated in the execution and delivery of the deeds "constituted a family agreement which was intended to supersede, and did supersede, the said will"; that the family agreement was supported by a sufficient consideration; that the subsequent act of the defendant in conveying one parcel and appropriating the proceeds to her own use constituted inequitable and unconscientious conduct and justified "the intervention of a court of equity to prevent the abuse of such confidence by impressing upon the property and its proceeds an implied trust for the benefit of the plaintiff"; that the acquiescence by the defendant and the plaintiff's brothers and sisters in the validity of the deeds for so long precludes them "from setting up the will at this time, even though they were not aware of its existence at the time the deeds and release were signed"; that the legal title to the two parcels not conveyed by the defendant was vested in her, but that she holds an undivided one-sixth thereof and an undivided one-sixth of the proceeds of the parcel sold "in trust for the plaintiff, subject to a life estate therein in favor of the defendant for the defendant's lifetime"; and that plaintiff was entitled to judgment to that effect; and that defendant is entitled for life to the net rents, profits, and income of the plaintiff's share therein, but has no right to sell the real estate, or to apply the personal property to her own use, or to dispose of the plaintiff's share therein by will; and that upon the death of the defendant

the plaintiff, if then living, will be entitled to immediate ownership; and that the defendant, and all persons claiming through or under her, be perpetually restrained and enjoined from setting up the will of the testator "as against the plaintiff, and from bringing any action or proceeding in this or any other court, based upon said will, or for the purpose of procuring an adjudication that said will deprives the plaintiff herein of her aforesaid share in her father's estate"; and to costs to be taxed.

The will was made some 16 years before the death of the testator and was never changed. Plaintiff was aware of its provisions and supposed at the time of his death that it remained in force. She testified that, in response to a statement by her after his death with respect to her not having inherited from her father, one of her brothers informed her that the will had been destroyed. The testimony on the part of the defendant tends to show that it was supposed at that time that the will had been lost, and that it was not discovered until the day after the decision, as already stated. The plaintiff claims, however, that her brothers and sisters and the defendant knew that the will was in existence and suppressed it from her with a view to avoiding the family disgrace incident to the publication of her elopement, which would likely ensue in the event that she contested the will. The son who subsequently found the will had been in charge of his father's business, which was conducting a saloon. He testified that the will was in his father's safe, and that at one time on seeing his father examining it he suggested that it be destroyed, and that he afterwards had the impression that it had been lost. He subsequently found the will in the safe, although it is to be inferred from his testimony that it was in a different location and escaped his observation when he looked through the safe after his father's death. It may well be that the defendant and her children, other than the plaintiff, had not sufficient ground for believing that the will had either been lost or destroyed, and that it was arranged to have the deeds executed with a view to avoiding a contest over the will, which is the view taken by the trial court. There is, however, no evidence that the plaintiff had any ground for contesting the will or threatened to contest it; and the reasonable inference is that the other children, who received an interest in their father's estate, determined to relinquish it to their mother, and requested plaintiff, who had only a nominal interest and claimed no more, to join with them. They, doubtless, expected that their mother would on her death leave the property to them, and appear to have been willing to have the plaintiff included in the bounty of their mother, or they would not have given up their vested right to her exclusion under the will. That, however, in no manner tends to impeach the will which limited the plaintiff to a nominal legacy. Nor can it be argued, in view of the finding of the trial court of the absence of fraud, that it would tend to render it probable that they conspired to perpetrate a fraud on the plaintiff.

[1-3] At the time the deeds were executed, the children all joined in a formal release of their rights and interests in the estate of their father to their mother. The trial court has found that the plaintiff

understood the contents of the release and the deeds, and these findings are sustained by the evidence. The sole basis, therefore, for the attempt to impress a trust, on the two parcels of real estate still retained by the defendant and on the proceeds of the third parcel, for the benefit of the plaintiff, is testimony given by the defendant and two of the children, but not by the plaintiff, to the effect that it was supposed by all of them that the execution of the deeds was to inure to the benefit of all the children after the death of their mother. The plaintiff did not testify that any representation was made to her to induce her to execute the deeds and release, nor did she testify that in doing so she supposed the property was to revert to her and her brothers and sisters after her mother's death. She merely says, in effect, that she did not know what the papers or their contents were, "or anything about them. My idea was that at the end of a year the estate was to be settled up. That is all it was. That is the idea I had at that time. Not at some subsequent time; at that time. When I signed the papers, I thought at the end of the year the estate would be settled up." There is no evidence, however, even of a parol agreement between the defendant and her children with respect to the effect of the deeds or limiting her ownership. So far as the evidence shows, there was nothing directly or indirectly stated with respect to the property being conveyed to the mother in trust.

The learned counsel for the respondent endeavors to sustain the judgment on the theory that the evidence, in effect, shows a promise on the part of the defendant to hold the premises in trust for the children, and that a relation of trust and confidence existed between the plaintiff and the defendant, and therefore, under the authority of Goldsmith v. Goldsmith, 145 N. Y. 313, 39 N. E. 1067, Amherst College v. Rich, 151 N..Y. 282, 45 N. E. 876, 37 L. R. A. 305, and Lafayette Street Church Society v. Norton, 202 N. Y. 379, 95 N. E. 819, 39 L. R. A. (N. S.) 906, and kindred cases, a trust may be impressed upon the property in the hands of the defendant. The evidence, however, does not bring the case at bar within the doctrine of those decisions. At most, the evidence shows a misunderstanding on the part of some of the grantors other than plaintiff, and perhaps on the part of the defendant with respect to the legal effect of the conveyances and release. The evidence on which the court made the findings with respect to the understanding between the children and their mother does not relate to facts. No writing was proved or interview given. The witnesses merely stated what their understanding with respect to the effect of what they did was. The defendant, it is true, on cross-examination admitted that she testified on the former trial that:

"My idea was to get hold of the property and give it to her, so that I was not going to take away her right, but simply keep it away from her husband. That was the understanding under which I took these deeds. I would not have taken these deeds under any other understanding. I wanted to be fair. She is just the same to me as the rest. That was the understanding. My daughter had that idea, and I gave her that idea."

The defendant had another daughter who testified with respect to her understanding concerning the effect of the conveyances. It is

not entirely clear to which daughter the defendant referred in her testimony quoted; but, if it be assumed that she alluded to the plaintiff, it does not appear that any representation she made to or assurance she gave to. plaintiff was made or given before the execution of the deeds or release or as an inducement thereto, and it can scarcely be argued, in view of the plaintiff's testimony to which reference has been made, that she relied on any representation made to her by her mother. The testimony of the defendant, taken as a whole, quite clearly shows that no inducement was offered or request made by her for the execution of the deeds, and that she received them unconditionally. The plaintiff was 38 years of age and had not been a member of her mother's household since she eloped with Apgar. She made no claim to an interest in the property, and no representation was made to her. There is no evidence therefore that the plaintiff was induced to execute the deeds in reliance upon a promise resting in parol which through trust and confidence she was led to believe, to bring the case within the authorities cited. The evidence is insufficient to warrant a decision that the absolute conveyances constituted the defendant a trustee of the property for the benefit of the plaintiff and the other grantors.

These views require the reversal of findings Nos. 15, 16, and 17, and of all conclusions of law, and the insertion of a conclusion of law directing judgment for the dismissal of the complaint with costs, and the reversal of the judgment with costs to appellant to be taxed, and the entry of judgment dismissing the complaint upon the merits with costs. All concur.